UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

    DANIEL G. EATON and                                 Chapter 13
    SUSAN J. EATON,                                      Case No.: 08-62201

                                    *Debtors*.
_____

APPEARANCES:

BARBARUOLO LAW FIRM, P.C.                      PAULA M. BARBARUOLO, ESQ.
*Attorneys for Debtors*
12 Cornell Road
Latham, New York 12210


MARK W. SWIMELAR, ESQ.                          MAXSEN D. CHAMPION, ESQ.,
*Chapter 13 Standing Trustee*                         Of Counsel
250 South Clinton Street
Suite 203
Syracuse, New York 13202

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER[1]

      Before the Court is the Objection to Confirmation ("Objection") filed by Mark W. Swimelar, Esq., Chapter 13 Trustee ("Trustee"), on January 6, 2009 (No. 20), to the Amended Chapter 13 Plan ("Amended Plan") filed by Daniel and Susan Eaton ("Debtors") on December 29, 2009 (No. 17).[2] The Trustee objects to confirmation of Debtors' Amended Plan pursuant to

---

[1] This Memorandum-Decision and Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7056.

[2] This matter was initially placed on the Court's reserve decision list on June 8, 2009. The Trustee filed his Memorandum of Law on May 14, 2009 (No. 34), and Debtors filed their reply Memorandum of Law on June 1, 2009 (No. 35). The Court thereafter discovered numerous errors that necessitated multiple amendments by Debtors of their required Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official "Form 22C"), *see* FED. R. BANKR. P. 1007(b)(6), the last of which was filed November 16, 2010 ("Third Amended Form 22C," No. 46). As a result, the matter was not considered fully submitted until November 22, 2010. As stated in the Trustee's letter to the Court dated November 22, 2010 (No. 47), the Trustee concedes that Debtors' Third Amended Form 22C accurately reflects that Debtors have negative disposable income

11 U.S.C. § 1325(b)(1)(B)[3] because it proposes payments of $500 per month for forty-seven months and a one percent pro rata distribution to unsecured creditors.  Stated more generally, the issue before the Court is whether, for purposes of confirmation, above median income debtors with negative disposable income, but whose schedules indicate positive projected disposable income, may propose a plan duration of less than five years without paying their unsecured creditors in full.

## JURISDICTION

The Court has jurisdiction over the parties and this core contested matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(L), and 1334(a) and (b).

## FACTS

Debtors filed a joint Chapter 13 Petition and Schedules A through J on September 15, 2008 (No. 1).  Line 20.c. of Debtors' Schedule J, titled "Current Expenditures of Individual Debtor(s)," reports monthly net income in the amount of $503.89.  The means test formula, by comparison, results in a negative amount of $578.25 per month, as shown on Line 59 of Debtors' Third Amended Form 22C.  Part II of Debtors' Third Amended Form 22C, titled "Calculation of § 1325(b)(4) Commitment Period," at Line 15, lists an Annualized Current Monthly Income for Debtors of $69,888.00, which exceeds the Median Family Income for Debtors' household size of three in New York, reported at Line 16, of $64,673.00.  Accordingly, Debtors checked the box stating that "The applicable commitment period is 5 years" on the top of Page 1 of their Third Amended Form 22C.  Although Debtors are above median income debtors, their Amended Plan

---

under the means test formula.  *See* 11 U.S.C. §§ 707(b)(2), 1325(b)(2), (3) (2010).  The Trustee also confirmed that neither party wished to make further submissions for the Court's consideration, thereby requiring the Court to now rely upon Debtors' Memorandum of Law filed January 10, 2010 (No. 39), and the Trustee's Memorandum of Law filed January 11, 2010 (No. 40).  For the reasons stated herein, neither Debtors' Memorandum of Law nor the Trustee's Memorandum of Law is directly on point with the facts of this case.

[3] Unless otherwise indicated, all future section references herein are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2010) (the "Bankruptcy Code"), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

proposes a term of forty-seven months rather than sixty months, and a total dividend of only one percent to general unsecured creditors.

The Trustee does not object to any of Debtors' computations made in their Third Amended Form 22C. Rather, both parties agree that this contested matter involves a question of law only, thereby obviating the need for an evidentiary hearing.

## ARGUMENTS

In support of their position that their Amended Plan should be confirmed, Debtors cite a single and familiar case, *In re Green*, 378 B.R. 30 (Bankr. N.D.N.Y. 2007), *overruled in part by Hamilton v. Lanning (In re Lanning)*, 130 S. Ct. 2464 (2010). In *Green*, Chief Judge Robert E. Littlefield, Jr. held, *inter alia*, that "negative disposable income results in a debtor not having projected disposable income to commit for the [applicable commitment period] pursuant to § 1325(b)(1)(B)." *Id.* at 39. Chief Judge Littlefield therein concluded that without projected disposable income, which the Court then viewed as historically rooted, "§ 1325(b)(1)(B)'s [applicable commitment period] is not germane and does not impose a confirmation impediment." *Id.* Notwithstanding the extensive body of Chapter 13 case law that has developed since *Green* was decided on this and other relevant issues, including the calculation of projected disposable income, Debtors simply ask this Court to adopt the reasoning and holding of *Green*.[4]

The Trustee advocates for this Court to conclude, like a majority of courts to have decided the issue or some variation of the issue now before it, that § 1325(b) sets forth a

---

[4] In fairness to Debtors, the Court is cognizant of the fact that the Supreme Court's decision in *Hamilton v. Lanning*, 130 S. Ct. 2464, 2478 (2010) (adopting the forward-looking approach to calculating projected disposable income, thereby allowing the bankruptcy court to "account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation"), post-dated Debtors' filing of their final Memorandum of Law. Debtors have not sought to change or augment their arguments, however, and more than enough time has elapsed for them to do so since the Supreme Court's issuance of *Lanning* on June 7, 2010. This is especially true in light of the adjusted submission date of this decision on November 22, 2010.

temporal requirement that applies whether the debtor has positive, zero, or negative projected disposable income. Although neither party squarely addresses whether Debtors have positive projected disposable income under *Lanning* for purposes of § 1325(b)(1)(B), the Trustee cites both *Coop v. Frederickson (In re Frederickson)*, 545 F.2d 652, 660 (8th Cir. 2008), *cert. denied* 2009 U.S. LEXIS 2016 (Mar. 23, 2009) (holding that where a debtor actually does have projected disposable income, the plan must pay 100% or its length must be equal to the applicable commitment period). The Trustee also cites *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 875–77 (9th Cir. 2008) (holding that §1325(b) establishes a minimum plan duration, but that this temporal requirement does not apply if the debtor has zero or negative projected disposable income).

## DISCUSSION

The term "applicable commitment period" is a creation of BAPCPA. The BAPCPA amendments to § 1325 included the substitution of this term for the "three-year period" language previously found in subsection (b)(1)(B). *Compare* 11 U.S.C. § 1325(b)(1) (2000), *with* 11 U.S.C. § 1325(b)(1) (2010). Section 1325(b), as amended, reads as follows:

> (b)(1)  If the trustee or a holder of an allowed unsecured claim objects to the confirmation of the plan, then *the court may not approve the plan unless*, as of the effective date of the plan–
>  (A)  the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>  (B)  the plan provides for payment of all of the debtor's projected disposable income to be received in the *applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
> . . . .
> (b)(4)  For purposes of this subsection, the '*applicable commitment period*'–
>  (A) subject to subparagraph (B), *shall be*–
>   (i)  3 years; or
>   (ii)  *not less than* 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than–

> > (I)    in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
> > (II)   in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number of fewer individuals; or
> > (III)  in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $625 per month for each individual in excess of 4; and
> 
> (B) *may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.*

11 U.S.C. § 1325(b)(1), (4) (2010) (emphasis added).

The Court's inquiry here is limited to what is meant by the term "applicable commitment period," and thus no conclusions will be drawn about Debtors' projected disposable income at this time. Following its review of nearly two dozen cases, leading authoritative treatises, and several scholarly articles addressing this question, the Court may fairly state that there is little, if anything, to be added by this Court that has not already been said by other jurists and scholars since BAPCPA became law. *See, e.g., In re Meadows*, 410 B.R. 242, 244 (Bankr. N.D. Tex. 2009) ("This issue has been well-vetted in the courts."); *see also* Evan J. Zucker, *The Applicable Commitment Period: A Debtor's Commitment to a Fixed Plan Length*, 15 Am. Bankr. Inst. L. Rev. 687, 689 (2007) (hereinafter "*A Debtor's Commitment*") (discussing the "current dichotomy in interpreting the meaning of the applicable commitment period"). In fact, this issue has been decided by the United States Court of Appeals for the Sixth, Eighth, Ninth, and Eleventh Circuits. *Baud v. Carroll*, 2011 U.S. App. LEXIS 2182 (6th Cir. Feb. 4, 2011); *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873 (11th Cir. 2010); *Frederickson*, 545 F.3d 652 (8th Cir. 2008); *Kagenveama*, 541 F.3d 868 (9th Cir. 2008). As summarized by the Sixth Circuit, "the question of whether § 1325(b) sets forth a temporal requirement or a monetary requirement has

split the courts into several interpretive camps." *Baud*, 2011 U.S. App. LEXIS 2182, at *21. Specifically, the Circuit Court in *Baud* identified the following four camps:

> [One] The United States Court of Appeals for the Eleventh Circuit and a majority of other courts have held that, if the trustee or the holder of an allowed unsecured claim objects to confirmation of a Chapter 13 plan that provides for less than a full recovery for unsecured claimants, the plan cannot be confirmed unless its length is equal to the applicable commitment period; according to these courts, this temporal requirement applies whether the debtor has positive, zero or negative projected disposable income. . . . [Two] The United States Court of Appeals for the Eighth Circuit and other courts have held that, if the trustee or the holder of an allowed unsecured claim objects to the confirmation of a Chapter 13 plan of a debtor with positive projected disposable income whose plan provides for a less than full recovery for unsecured claimants, the plan cannot be confirmed unless its length is equal to the applicable commitment period; these courts, however, have declined to decide whether this temporal requirement applies when the debtor has zero or negative projected disposable income. . . . [Three] The United States Court of Appeals for the Ninth Circuit as well as other courts have held that § 1325(b), although not establishing a minimum plan duration, does require a debtor with positive projected disposable income facing a plan objection and whose plan provides for a less than full recovery for unsecured claimants to pay unsecured creditors for the duration of the applicable commitment period, but that this temporal requirement does not apply if the debtor has zero or negative projected disposable income. . . . [Fourth] Finally, a significant minority of lower courts have followed the 'monetary' approach, holding that § 1325(b) does not require the debtor to propose a plan that lasts for the entire length of the applicable commitment period; rather, as long as the plan provides for the payment of the monetary amount of disposable income projected to be received over that period, the court may confirm a plan that lasts for a shorter time. . . .

*Id.* at *22–25 (internal citations and footnotes omitted). Finding the reasoning and holdings of *Baud* and *Tennyson*, as well as the dissenting portion of Judge Bea's opinion in *Kagenveama*, to be most persuasive, this Court now adopts the broad rule embraced by the Sixth and Eleventh Circuits "that an above median income debtor [must] remain in bankruptcy for a minimum of five years, unless all unsecured creditor[s]' are paid in full," *Tennyson*, 611 F.3d at 874, irrespective of what the debtor's projected disposable income calculations may yield. Further, the Court agrees that "[t]he only exception to this minimum period, if unsecured creditors are fully repaid, is provided in § 1325(b)(4)." *Tennyson*, 611 F.3d at 880.

While *Baud* is, in this Court's view, the most complete opinion to date, due in part to the fact that the Sixth Circuit alone has benefitted from the Supreme Court's recent issuance of *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716 (2011) (requiring strict adherence to the expense component of the means test formula for calculation of above median debtors projected disposable income), these opinions share many common threads as further discussed *infra*. This Court finds the reasoning below to be dead on and, as such, wholly compelling.

First, the cases profess a plain or logical reading of the term "applicable commitment period" as a temporal requirement that does not produce anomalous or absurd results. *See Baud*, 2011 U.S. App. LEXIS 2182, at *30–31 ("[O]ne strong indicator that § 1325(b) should be interpreted as establishing a temporal requirement is that, if Congress had intended the applicable commitment period simply to act as a multiplier in a calculation determining the amount of money that must be paid to unsecured creditors, it would have said so explicitly.");[5] *Tennyson*, 611 F.3d at 877 ("The text of § 1325(b)(4) is clear, unambiguous, and does not result in any absurd consequences."); *Kagenveama*, 541 F.3d at 877–88 (Bea, J., dissenting in part) ("I dissent because Congress pretty clearly stated [an above median income debtor's] creditors should have up to five years to keep an eye on the debtor to perhaps share in any of his new good times."). Parsing the language directly, the Eleventh Circuit in *Tennyson* stated,

> '[A]pplicable' and 'commitment' are modifiers of the noun, the core substance of the term, 'period.' The plain meaning of 'period' denotes a period of time of duration. Merriam Webster's Collegiate Dictionary 864 (10th ed. 1996). 'Applicable commitment period' at its simplest is a term that relates to a certain duration, and based on its presence in § 1325, it is a duration relevant to Chapter 13 bankruptcy. The modifier 'commitment' then reveals that 'applicable commitment period' is a duration to which the debtor is obligated to serve. *See* Merriam Webster's Collegiate Dictionary 231 (10th ed. 1996). Finally, the

---

[5] The Supreme Court in *Lanning* reached the same conclusion in the context of determining how to define "projected disposable income," stating that "when Congress wishes to mandate simple multiplication, it does so unambiguously–most commonly by using the term 'multiplied.'" *Lanning*, 130 S. Ct. at 33 (citing various sections of the Bankruptcy Code and other federal statutes).

> meaning of 'applicable' reflects the fact that there are alternate 'commitment periods' depending on the debtor's classification as an above median income debtor or a below median income debtor.

*Tennyson*, 611 F.3d at 877. The Circuit Court in *Tennyson* also zeroed in on the word "shall" in § 1325(b)(4), noting that "the word shall is ordinarily the language of command," *id.* (citing *Alabama v. Bozeman*, 533 U.S. 146, 153 (2001)), and its usage "normally creates an obligation impervious to judicial discretion," *id.* (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)). Accordingly, courts may not create a judicial rule of law lessening the five year mandatory "applicable commitment period" for above median income debtors who propose to pay less than one hundred percent of their unsecured claims.

Second, the Circuit Courts uniformly rely upon the legislative history and Congressional intent to eliminate what Congress perceived as widespread bankruptcy abuse by curtailing the bankruptcy courts' discretion and requiring debtors to repay unsecured creditors the maximum they can afford. *Baud*, 2011 U.S. App. LEXIS 2182, at *42–43 ("[O]ur interpretation better serves BAPCPA's core purpose of ensuring that debtors devote their full disposable income to repaying creditors."). The Supreme Court did the same in *Ransom*, interpreting the text and statutory concept to best serve this purpose, and thereby lending support to the Circuit Courts' approach in this respect. *Ransom*, 131 S. Ct. at 721.

Third, as the Sixth and Eleventh Circuits recognized, the Supreme Court's decision in *Lanning* also lends support to a temporal interpretation of the "applicable commitment period." Although the Supreme Court in *Lanning* did not directly comment on the meaning of "applicable commitment period," it did state that the phrase "to be received in the applicable commitment period" "defines the period for which a debtor's disposable income must be calculated (*i.e.,* the *period* over which the projection extends), and thus the amount the debtor must ultimately pay

his unsecured creditors." *Lanning*, 130 S. Ct. at 2481 (emphasis added).  As the Eleventh Circuit observed, "[i]f [the] 'applicable commitment period' were left dependent upon projected disposable income [under § 1325(b)(1)(B) . . . then it would necessarily be dependent on the multitude of indeterminate factors that *Lanning* has allowed to be used in the determination of projected disposable income." *Tennyson*, 611 F.3d at 878–79.  The Supreme Court in *Lanning* set forth the following rationale when it rejected the mechanical approach for purposes of calculating projected disposable income:

> In cases in which a debtor's disposable income during the 6-month look-back period is either substantially lower or higher than the debtor's disposable income during the plan period, the mechanical approach would produce senseless results that we do not think Congress intended.  In cases in which the debtor's disposable income is higher during the plan period, the mechanical approach would deny creditors payments that the debtor could easily make.

*Lanning*, 130 S. Ct. at 2475–76.  This logic applies with equal force to the current debate over whether the "applicable commitment period" must be read as temporal or as a multiplier.

As numerous courts have emphasized when favoring the temporal approach in the "applicable commitment period" context, this approach is entirely consistent with the rights afforded to a trustee or unsecured creditor under § 1329, which governs post-confirmation modifications.  *Tennyson*, 611 F.3d at 879 (allowing an above median income debtor to confirm a plan of less than five years would "deprive the unsecured creditors of their full opportunity to recover on their claims . . . by way of post confirmation plan modifications."); *accord In re Pena*, 2010 Bankr. LEXIS 1122, at *33 (Bankr. N.D. Ind. Apr. 15, 2010); *see also* Zucker, *A Debtor's Commitment* at 689 ("The overriding interest for an unsecured creditor is the ability to capture any increases in the debtor's disposable income.").[6]  It has further been suggested that

---

[6] For every argument, there is naturally a counterargument. Some commentators have suggested that "the better view is that the applicable commitment period is a mere multiplicand used to calculate the total discharge price, not an actual temporal requirement," David Gary Carlson, *Modified Plans of Reorganization and the Basic Chapter 13*

the reporting requirements found in § 521(f), which mandate a Chapter 13 debtor after confirmation to file with the court a copy of the debtor's annual tax returns and a statement of income and expenditures for each successive year in bankruptcy, 11 U.S.C. § 521(f), lend support to the temporal interpretation of "applicable commitment period" because they contemplate the debtor's ongoing obligation to commit future increases in income to the Chapter 13 plan. Zucker, *A Debtor's Commitment* at 705–06. Thus, the multiplier approach would deny creditors funds that Congress intended for them to reach over the life of the plan, as evidenced by the overall statutory scheme of the Bankruptcy Code.

Finally, the Circuit Court opinions also conclude that "neither § 1322(d) nor § 1325(b) is superfluous under the temporal approach."[7] *Baud*, 2011 U.S. App. LEXIS 2182, at *31 (citing *Tennyson* and Judge Bea's opinion in *Kagenveama*). As the Sixth Circuit elaborated in *Baud*,

> The provisions are not superfluous because they address different concerns. Section 1322(d) establishes maximum plan lengths out of a concern for keeping debtors in Chapter 13 an unduly long time . . . . By contrast, § 1325(b) establishes the minimum time (upon the filing of an objection) for the payment of projected disposable income and does so . . . out of a concern for maximizing creditor recoveries.

*Id.* at *32 (omitting footnote discussing the Congressional history of § 1322(d) to eliminate a pattern whereby debtors could find themselves under court supervised repayment plans for seven to ten years, which the House Committee likened to "involuntary servitude."); *See also, e.g., In re Wirth*, 431 B.R. 209, 215 (Bankr. W.D. Wis. 2010) (Section 1322(d) is not rendered

---

*Bargain*, 83 Am. Bankr. L.J. 585, 638 (2009), because § 1329(a)(2) directly invites post-confirmation modification of a plan to shorten the time of payment, *id.* at 63; *see also* Zucker, *A Debtor's Commitment* at 722 ("A debtor's ability to shorten their plan after confirmation . . . weakens the temporal interpretation of the applicable commitment period."). Whether § 1325(b)(1)(B) applies to a modification, however, is not presently before the Court. As such, it is a question best left for another day when the right case and facts present themselves.

[7] Section 1322(d)(1) provides that, if the debtor is an above median income debtor, "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1325(d)(1) (2010). Section 1322(d)(2) provides that, if the debtor is a below median income debtor, "the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." 11 U.S.C. § 1322(d)(2) (2010).

meaningless, "as those requirements apply to all proposed plans and to the treatment of all claims, including secured or priority claims which a debtor might otherwise attempt to pay over more than five years but for the cap on plan length found in the statute."); *Baxter v. Turner (In re Turner)*, 425 B.R. 918, 920 (Bankr. S.D. Ga. 2010) ("While some courts look to § 1322 as stating the length of the plan, § 1322 sets the *maximum* length of a plan and § 1325(b)(1) states the *required* length of the plan depending on whether debtor is a below or above-median income debtor.") (emphasis in original) (citing Alane A. Becket & Thomas A. Lee III, *Applicable Commitment Period: Time or Money?*, Am. Bankr. Inst. J. 16 (March 2006)); *In re Pfeiler*, 395 B.R. 464, 471 (Bankr. D. Colo. 2008) (Sections 1322(b) and 1325(b)(4) "are compatible."). Accordingly, the Court likewise concludes that §§ 1322(b) and 1325(b)(4) are "not superfluous because they address different concerns." *Baud*, 2011 U.S. App. LEXIS at *31–32.

## CONCLUSION

In the simplest of terms, the language of § 1325(b)(1)(B) "makes it clear that if a debtor wishes to obtain the increased benefits of filing Chapter 13 (over Chapter 7), that choice comes with a price." *In re Kidd*, 374 B.R. 277, 280 (Bankr. D. Kan. 2007). "The price that Congress placed on admission into Chapter 13 is to tie the debtor to a plan for a definite period of time, which period is clearly defined in § 1325(b)(4) as either three or five years, depending on the debtor's income." *Id.*

As Debtors in this case are above median income, they must either commit to a plan length of five years or, alternatively, to a one hundred percent dividend to their unsecured creditors over a shorter plan length of their choosing.  Accordingly, the Court will sustain the Trustee's Objection and deny confirmation of Debtors' Amended Plan.

IT IS SO ORDERED.

Dated at Utica, New York
this 5th day of April 2011

                                      /s/ Diane Davis_____
                                      DIANE DAVIS
                                      United States Bankruptcy Judge